**ARTCRAFT NOVELTIES CORPORATION, Plaintiff-Appellee,**

v.

**BAXTER LANE COMPANY OF AMARILLO, Defendant-Appellant.**

No. 81–1288.

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1982.

Silverman & Silverman, Ely Silverman, S. Tom Morris, Amarillo, Tex., for defendant-appellant.

Richards, Harris & Medlock, Jerry W. Mills, Daniel V. Thompson, Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

THORNBERRY, Circuit Judge:

Baxter Lane Company, the defendant below and appellant here, manufactures and sells an extensive line of novelty products commonly known as "Texas brag items."[1] Baxter Lane has been selling these products for over twenty years and has been quite successful, currently employing six full-time salespersons engaged in the marketing of as many as 600 novelty items. Plaintiff Artcraft Novelties Corporation began in 1973 to manufacture and sell two "Texas brag" products: an oversized fly swatter marked "Texas Fly Swatter" and an over-sized model of a fly marked "Texas Housefly." These products have also been successful; indeed, Artcraft has sold over half a million of the fly swatters and over 150,000 of the flies, with sales concentrated primarily in Texas but extending throughout the country. Artcraft subsequently applied for and received trademark registration for the marks "Texas Fly Swatter" and "Texas Housefly," and these marks eventually became incontestable under the Lanham Act.

For approximately six years, plaintiff and defendant enjoyed a profitable business relationship in which defendant bought and distributed plaintiff's products under the "Texas Fly Swatter" and "Texas Housefly" marks. During this time, Baxter Lane sold approximately 100,000 units of plaintiff's

---

1. For example, Baxter Lane manufactures and sells combs, toothbrushes, and sunglasses, all of which are grossly oversized and marked as a "Texas" product. Thus, the consuming public, in its desire to experience the novelty of Texas braggadocio, can purchase Baxter Lane's "Texas Pocket Comb," "Texas Super Toothbrush," and "Texas Size Sunglasses." And this is only a small sample of the Baxter Lane line of novelty products.

products. In late 1978 or early 1979, Baxter Lane decided to end its relationship with plaintiff and to begin manufacturing its own novelty fly swatters and flies. Baxter Lane therefore instructed its manufacturer to copy plaintiff's products, which the manufacturer did with precision.

After Baxter Lane began selling its own copies, plaintiff sent notices that Baxter Lane was infringing upon plaintiff's trademarks in the two products. Baxter Lane nevertheless continued to sell its copies. Plaintiff then filed suit for trademark infringement under both the common law and the Lanham Act. After a jury trial, Baxter Lane was found liable for both actual and punitive damages, as well as for attorney's fees. In addition, the district court issued an injunction prohibiting Baxter Lane from the further sale or distribution of oversized fly swatters and flies and ordering the destruction of the molds used to manufacture Baxter Lane's copies. From this decision Baxter Lane now appeals. For the reasons discussed below, we affirm.

### I. Prior Use

■ Initially, Baxter Lane complains that the district court committed reversible error by refusing to admit evidence of Baxter Lane's prior use of the term "Texas" in combination with other oversize novelty goods. Baxter Lane wanted to use this evidence to show its prior use of plaintiff's trademark, thus invalidating plaintiff's claim to the mark. While we agree that prior use of a trademark vitiates a subsequent user's claim to the mark, we cannot agree that the proffered evidence shows Baxter Lane's prior use of plaintiff's mark.

A trademark, of course, is not a right existing in gross, but rather is a right to the goodwill created by the association of one's mark with goods sold in the marketplace. "[A] proprietor, if he owns or controls the goods which he exposes to sale, is entitled to the exclusive use of any trade-mark adopted *and applied by him to the goods,* to distinguish them as being of a particular manufacture or quality . . . ." *McLean v. Fleming,* 96 U.S. 245, 252, 24 L.Ed. 828, 831 (1877) (emphasis added). *Accord Blue Bell,*

*Inc. v. Farah Manufacturing Co., Inc.,* 508 F.2d 1260, 1265 (5th Cir. 1975) ("The exclusive right to a trademark belongs to one who first uses it *in connection with specified goods.*") (emphasis added). Thus, in a very strict sense, Baxter Lane has a trademark only in the specific goods on which he has used the "Texas" label, not on the fly swatter and fly sold and marked first by plaintiff.

But this is not the complete answer, for "[t]he protection which the law gives the owner of a trade-mark is not confined to the goods upon which it is, or has been, used by the owner of it but extends to products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Standard Brands v. Smidler,* 151 F.2d 34, 37 (2d Cir. 1945). "A trade-mark owner has a right to extend its mark to new wares which may be the natural outgrowth of the trade-mark products." *Stardust, Inc. v. Weiss,* 79 F.Supp. 274, 278 (S.D.N.Y.1948). This doctrine, often called the "expansion of business" doctrine, therefore allows the first user of a mark to challenge any use of that mark by a new user which inferentially suggests that the first user is selling the new goods in an expanded line of business. The doctrine's purpose is to prevent buyer confusion concerning the source of the goods identified by the trademark. As applied to this case, the doctrine would allow Baxter Lane to enjoin plaintiff's use of the term "Texas" in association with oversized novelty products.

The "expansion of business" doctrine, however, cannot apply as Baxter Lane wishes to use it, namely, as a defense for Baxter Lane's own infringement upon plaintiff's use of the mark on new goods. Although Baxter Lane at one time had a right to expand its mark to new "Texas brag" items, it has no right to allow another to use the mark on new goods and then to claim the mark on those goods for itself. Baxter Lane's expansion of business cannot prevail when prior to the time it started to manufacture and sell the novelty fly swatters and flies a newcomer entered the field

with a mark similar or identical to Baxter Lane's and Baxter Lane did not, although knowing, take positive steps to assert its right to protection of its mark in the new field of endeavor. *Stardust, Inc. v. Weiss, supra,* 79 F.Supp. at 278. As Judge Learned Hand stated in a similar case, "[i]f [the prior user] proposed to keep the [new] market as an unused preserve, it was bound to protect it against invaders by affirmative action; it could not impose upon [the new seller] the duty of divining its own purpose or possible mistakes of the public." *Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corp.,* 105 F.2d 908, 911 (2d Cir.), *cert. denied,* 308 U.S. 616, 60 S.Ct. 262, 84 L.Ed. 515 (1939). Thus, Baxter Lane cannot complain about plaintiff's sales of new "Texas brag" products when Baxter Lane did nothing to stop them and in fact aided them by selling plaintiff's products itself. Baxter Lane cannot now object to any confusion caused by plaintiff's sales of "Texas" fly swatters and flies when Baxter Lane allowed and aided those sales until plaintiff had established its own market source and identity. Once plaintiff established goodwill for its own products—with Baxter Lane's knowledge and assistance—plaintiff's rights to the mark superseded Baxter Lane's. Baxter Lane therefore cannot defend its infringement as an expansion of business.

## II. Descriptiveness

■ Baxter Lane next contends that the district court erred by refusing to admit evidence of the descriptiveness of plaintiff's trademark. Of course, if plaintiff's mark were merely descriptive, plaintiff could not claim it as an exclusive right. *See Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183–84 (5th Cir. 1980). "A 'descriptive' term 'identifies a characteristic or quality of an article or service,' as, for example, its color, odor, function, dimensions, or ingredients." *Id.* at 1183 (citation omitted). But plaintiff's mark, using "Texas" in combination with oversized goods, is not descriptive; it does not describe the goods as being "Texas" products. Instead, the mark is a suggestive term, which " 'suggests, rather than describes,' some characteristic of the goods to

which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." *Id.* at 1184. The mark, in other words, suggests to the consumer that the oversize product is Texan because, as we can all imagine, everything is larger in Texas. Plaintiff's mark therefore was properly protected, and Baxter Lane's evidence of descriptiveness was not relevant.

Even assuming the district court should have admitted Baxter Lane's evidence of descriptiveness, we find that any error must have been harmless. Six witnesses testified that the use of the term "Texas" in combination with "Texas brag" items describes "large," "big," "very large," or "oversized" goods. Their testimony presented the substance of the evidence that Baxter Lane sought to introduce, and thus remedied any harm caused by the district court's exclusion of that evidence.

## III. Section 8 and 15 Affidavits

Even if plaintiff's trademark is enforceable as filed, Baxter Lane claims that the mark should now be held invalid because of violations contained in the affidavits filed by plaintiff to satisfy sections 8 and 15 of the Lanham Act. Baxter Lane, however, did not timely raise these defenses of statutory abandonment and fraud. It requested no special interrogatories on the issues, and it did not object to the district court's jury charge, which did not contain any such interrogatories. Baxter Lane finally raised the issues in its late-filed request for jury instructions and motion for partial summary judgment; these documents were not filed until after hours on the day that the parties rested and the jury began deliberations, and they were not officially received until the following morning, when the jury returned its verdict.

■ Baxter Lane should have objected to the court's giving or failure to give jury instructions before the jury retired. *See Burdis v. Texas & Pac. Ry. Co.,* 569 F.2d 320, 324 (5th Cir. 1978). Since Baxter Lane clearly failed to do this, we find that these arguments were waived.

■ Baxter Lane also should have filed its motion for summary judgment—actually, a motion for directed verdict, see C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2713, at 406 (1973)—at the close of plaintiff's evidence or certainly at the close of all of the evidence before the jury retired. See 5A Moore's Federal Practice § 50.04, at 50–50 (1982). We therefore would ordinarily find these arguments to have been waived, but we will not in this case, because the district court chose to consider the motion for summary judgment and to deny it. We cannot say, though, that the deemed finding [2] of no fraud and no abandonment was clearly erroneous. The alleged misrepresentation, which Baxter Lane argues as a basis for fraud and abandonment, was simply that plaintiff's president—Mr. Foster—filed Lanham Act affidavits declaring his ownership of the mark, when in fact the plaintiff corporation owned it. This was not a material misrepresentation in light of the circumstances—namely, that Mr. Foster owned the mark when it was registered, but subsequently transferred the mark to his closely held, family corporation by oral assignment. Mr. Foster certainly did not intend to deceive the Patent Office with the confusion over ownership, and the Patent Office could not have relied detrimentally on the misrepresentation in accepting the affidavits. Indeed, as to the section 8 affidavit, the ownership mistake was of no consequence, since section 8 allows filing by "legal representatives, predecessors, successors and assigns"; Mr. Foster was the original registrant, the predecessor in ownership, and the legal representative of the current owner. We therefore have no difficulty in upholding the implied findings of no fraud and no abandonment.

## IV. Distinctiveness

■ Finally, Baxter Lane urges us to restrict the remedy granted by the district court. The district court enjoined Baxter Lane from manufacturing or selling fly swatters and flies, regardless of whether it marks such products with plaintiff's trademark, if the products have shape, size, or color similar to plaintiff's marked products. This remedy rests on the jury finding that the shape, size, and color of plaintiff's fly swatters and flies are inherently distinctive—that is, that the particular design of plaintiff's oversized fly swatters and flies is distinctive enough to identify plaintiff as the source of the products. See Application of Penthouse International Ltd., 565 F.2d 679, 681 (5th Cir. 1977) ("[I]f [the configuration] be distinctive per se and capable of identifying [plaintiff's] goods, its registration is proper.").

Baxter Lane's only challenge to the jury finding of distinctiveness is its evidence that plaintiff's fly swatters and flies have been sold by businesses other than plaintiff. Plaintiff apparently allowed sales of its products not marked with its trademark, as well as sales of the products marked with the name of another business. We agree with Baxter Lane that these sales tend to undercut plaintiff's claim to be a single source for its products; nevertheless, we do not think that Baxter Lane has carried its burden of showing the jury's finding of distinctiveness to be reversible error. "Reversible error appears only when there is an insufficient evidentiary basis to support the verdict." Byrd v. Hunt Tool Shipyards, Inc., 650 F.2d 44, 48 (5th Cir. 1981). Here, there was ample evidence to support a finding of distinctiveness. The fly swatter and fly are, to say the least, quite distinctive. Moreover, plaintiff has sold a very large number of both items, allowing the jury to

2. Since Baxter Lane did not request a special interrogatory on the issues of fraud and statutory abandonment and since no such issue was presented to the jury, the issues are deemed found in accord with the judgment for plaintiff below. See Fed.R.Civ.P. 49(a); Smallwood v. Pearl Brewing Co., 489 F.2d 579, 606 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). And in fact, the jury did make findings relevant to the issues and adverse to Baxter Lane's position. The jury found that plaintiff's conduct "was not knowingly and willfully done for the purpose of and with the intent of deceiving the public" and that "[i]ts practices were not unfair, deceiving and misleading." As we show above, these findings, along with the deemed findings, are supported by the evidence.

infer that plaintiff has a market identity as a single source. Baxter Lane countered this inference with inconclusive evidence of sales without plaintiff's mark. It presented no evidence of the quantity of the un-marked sales and weak evidence of minor sales under a third-party's name.[3] In the face of plaintiff's extensive sales under its own mark, this evidence cannot overcome the jury's finding of distinctiveness; the jury finding, though contrary to Baxter Lane's rather weak evidence, is not without persuasive support in the evidence as a whole. We therefore affirm.

AFFIRMED.

---

**3.** Plaintiff sold the latter fly swatters with the marking "Tox-A-Wick" on the handle. Tox-A-Wick was an exterminator business that appar- ently wanted to use the fly swatters for local advertising.