**AMERICAN AUTOMOBILE ASSOCIA-TION (INCORPORATED)**

v.

**AAA INSURANCE AGENCY, INC.**

**Civ. No. A–84–CA–157.**

United States District Court,
W.D. Texas,
Austin Division.

Aug. 23, 1985.

Richard S. Siluk, Baker & Botts, Houston, Tex., Larry F. York, Baker & Botts, Austin, Tex., for plaintiff.

James N. Rader, James M. Steed & Associates, Austin, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOWLIN, District Judge.

This is an action for service mark infringement and unfair competition. Plaintiff contends that Defendant's use of the designation "AAA" in its insurance business is likely to cause confusion and constitutes infringement of Plaintiff's federally registered service marks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and that such use violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon Supp. 1985), and the common law of unfair competition. Plaintiff seeks a permanent injunction and its costs of suit.

Defendant responds that its use of "AAA" is not likely to cause confusion. Defendant also contends that Plaintiff's use of "AAA" for insurance services in Texas is illegal, and that Plaintiff's Service Mark Registration No. 829,265 was fraudulently obtained, because Plaintiff is not licensed to engage in the insurance business in Texas. Finally, Defendant contends that Plaintiff's action is barred by laches and acquiescence.

A trial was held on May 16, 1985, and the parties presented testimony and introduced exhibits at that time. The parties also have stipulated to certain undisputed facts in a Joint Pretrial Order filed with the Court. Upon consideration of the stipula-

tions and the evidence of record, and the applicable legal authorities, the Court finds that Defendant has infringed Plaintiff's federally registered service marks and has committed acts of unfair competition in violation of federal and state law, as more fully detailed in the following findings of fact and conclusions of law. Accordingly, Plaintiffs are entitled to injunctive relief and to their costs of suit.

## FINDINGS OF FACT

1. The American Automobile Association (Incorporated) (hereinafter sometimes referred to as "AAA") is a Connecticut corporation having its principal place of business in Virginia. Plaintiff has been doing business under the name and mark "AAA" since at least as early as 1902.

2. Defendant, AAA Insurance Agency, Inc., is a Texas corporation having its principal place of business at 600 Ft. Hood Road, Killeen, Texas 76540. Defendant was incorporated in Texas in 1979 and is owned and operated by Delmer G. Tipps, who is the president of the corporation.

3. Plaintiff AAA is an organization that provides its members with a variety of services throughout the United States and Canada, including the State of Texas. Since at least as early as 1916, AAA has been providing its members with the service of placing insurance with underwriters. Plaintiff's related company, Texas Club Service Agency, Inc. ("TCSA"), and other affiliated agents are duly licensed to act as insurance agents in the State of Texas. TCSA is wholly owned by Automobile Club Service Agency, Inc., a corporation that is wholly owned by Plaintiff. The "AAA" service marks are used prominently in the sale and advertising of TCSA's insurance services in Texas.

4. AAA is a widely known organization that has been extensively advertised and promoted throughout the United States. AAA currently has more than 22 million members, and the "AAA" name has come to be relied upon by a significant segment of the public as indicating AAA and its services. As a result of its widespread public use and recognition, the "AAA" mark has become an asset of substantial value and good will as a symbol of Plaintiff and its services.

5. AAA is the owner of federal service mark registrations for the mark "AAA" for insurance services, including Registration Nos. 547,321 and 829,265, registered in the United States Patent and Trademark Office on August 28, 1951, and May 23, 1967, respectively. (P.Ex. 1 & 2.) These registrations afford constructive notice throughout the United States of Plaintiff's claim to ownership of the "AAA" mark for insurance services. 15 U.S.C. § 1072 (1982). Furthermore, these registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and under 15 U.S.C. § 1115(b) they constitute conclusive evidence of AAA's exclusive right to use the "AAA" marks in connection with insurance services.

6. Defendant also is engaged in the business of placing insurance with underwriters. Without authorization from AAA, and over AAA's objection, Defendant and its predecessors have been doing business under the name "AAA Insurance Agency" since 1970. Defendant was incorporated as "AAA Insurance Agency, Inc." in 1979.

7. Defendant's insurance business is conducted at a single location in Killeen, Texas. Although Defendant has moved the location of its office in the past, Defendant has not expanded its business to more than one office. Defendant's total advertising expenditures from 1970 through 1983 were approximately $10,000, or about $750 per year.

8. Upon learning of Defendant's adoption and use of the "AAA" name in 1970, Plaintiff notified Defendant in writing that its use of "AAA" was an infringement of Plaintiff's federally registered marks. Defendant nevertheless continued to use the name "AAA." Upon learning of Defendant's continued use of that name in late 1983, Plaintiff again requested that Defendant change its name. Defendant refused, and this action followed.

9. Defendant's unauthorized use of the "AAA" designation in connection with its insurance business is likely to cause confusion as to Defendant's connection or affiliation with AAA, or its approval or endorsement by AAA. Mr. Tipps testified that the Defendant receives about two calls a month intended for Plaintiff AAA, even though Plaintiff currently has no office in Killeen, Texas. These misdirected calls show that a significant amount of actual confusion has occurred, and they demonstrate that people seeing or hearing Defendant's name are likely to associate Defendant with Plaintiff.

10. Any finding of fact which is deemed to constitute a conclusion of law is hereby adopted as such.

### CONCLUSIONS OF LAW

1. This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (1982), and the laws of the State of Texas. The Court has personal jurisdiction over the parties, and the Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1338, and the doctrine of pendent jurisdiction.

■ 2. Plaintiff has standing under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), to prevent the infringement of its registered service marks. Plaintiff also has standing under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), to prohibit Defendant's use of false designations of origin and false descriptions or representations.

### I. SERVICE MARK INFRINGEMENT.

■ 3. The parties have stipulated that Plaintiff is the owner of incontestable federal service mark registrations for the mark "AAA." Under Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b), these registrations constitute conclusive evidence of Plaintiff's exclusive right to use the "AAA" mark in commerce for the services of placing insurance with underwriters, subject to the seven defenses enumerated in that section. *See, e.g., Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1184–85 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Since Plaintiff's exclusive right to use the mark "AAA" in connection with such services is conclusively established as a matter of law, it remains only to determine whether Defendant has infringed Plaintiff's exclusive rights.

■ 4. Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides that a person shall be liable for infringement of a registered mark whenever, without the consent of the registrant, he uses in commerce "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." The test for infringement therefore is the likelihood of confusion. *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.,* 656 F.2d 186, 189 (5th Cir.1981). Actual confusion is not necessary. *Sun-Fun Products, Id.* at 191. Moreover, the likelihood of confusion is not limited to confusion as to the actual source of a product or service. The use of a name or mark that suggests an affiliation or connection with a trademark owner, or that causes a likelihood of confusion as to sponsorship or endorsement, also constitutes infringement. *Professional Golfers Association of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 669–70 (5th Cir.1975).

■ 5. In determining whether a likelihood of confusion exists, the courts consider a variety of factors, including the following:

(1) The strength of the plaintiff's mark;

(2) The degree of similarity between the plaintiff's and the defendant's marks;

(3) The similarity of the plaintiff's and the defendant's goods or services;

(4) The kinds of customers and retail outlets of the plaintiff and defendant;

(5) The similarities in advertising;

(6) The defendant's knowledge and intent in adopting its mark; and

(7) Actual confusion.

*E.g., Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). It is sufficient that any of the factors considered demonstrate a likelihood of confusion; it is not necessary that a majority of the factors be present in any given case. *See Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1159–60 (5th Cir.1982) (strength of mark and actual confusion support finding of likelihood of confusion). Each of the foregoing factors will be considered in turn.

A. *The Strength of Plaintiff's Mark.*

■ 6. The strength of the mark depends upon the degree of arbitrariness of the mark in relation to the products or services with which it is used. The cases generally identify four categories of marks in analyzing the scope of protection—in an ascending order of protection, marks are classified as (1) generic, (2) descriptive, (3) suggestive and (4) arbitrary or fanciful. *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183–84 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

7. A "generic" term is the common descriptive name for a type of product or service (e.g., "car", "bread", "shoes", etc.) and is entitled to no trademark protection. *Soweco, Inc. v. Shell Oil Co., supra.* A "descriptive" term is one that directly describes a characteristic or ingredient of a product or service, and it is entitled to protection only if it is shown to have acquired a degree of distinctiveness in identifying the plaintiff's product or service. *Id.* A "suggestive" term is one that does not directly describe, but rather requires the exercise of thought or imagination to arrive at a connection between the mark and the corresponding product or service. *Artcraft Novelties Corp. v. Baxter Lane Co.,* 685 F.2d 988, 991 (5th Cir.1982). A suggestive mark is entitled to protection without a showing of distinctiveness. *Id.*

Finally, an "arbitrary or fanciful" mark, as the name suggests, is one which neither describes nor suggests the nature of the product or service with which it is used. An arbitrary or fanciful mark is considered inherently distinctive and is entitled to the greatest degree of protection. *Waples-Platter Cos. v. General Foods Corp.,* 439 F.Supp. 551, 575 (N.D.Tex.1977); *see also Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1159 (5th Cir.1982).

■ 8. Use of the same or similar marks by third parties in unrelated businesses does not diminish the distinctiveness of a mark in a particular field. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1165 (11th Cir.1982).

9. In the present case, Plaintiff's "AAA" mark is arbitrary in connection with insurance services. The term "AAA" is neither suggestive nor descriptive of insurance services, nor is it a generic term for such services. Plaintiff's use of "AAA" is well known to its more than 22 million members throughout the United States and Canada, and others who have been exposed to the widespread use of Plaintiff's name and marks. Accordingly, "AAA" is a strong and widely recognized mark in connection with Plaintiff's insurance services.

B. *Similarity of the Marks.*

■ 10. In determining whether two marks are confusingly similar, a side-by-side comparison of the marks, emphasizing differences in detail, is not the appropriate test. The proper test is whether the average consumer, upon encountering the allegedly infringing mark in the isolated circumstances of the marketplace and having only a general recollection of the plaintiff's mark, would be likely to confuse or associate the defendant or his services with the plaintiff. *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976); *National Association of Blue Shield Plans v. United Bankers Life Insurance Co.,* 362 F.2d 374, 376 (5th Cir. 1966). Identity of the marks therefore is not required to establish infringement; the

test is one of "resemblance rather than identity." *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 315 F.Supp. 45, 50 (S.D.N.Y.1970), *aff'd,* 437 F.2d 566 (2d Cir.1971). It is sufficient that there be similarity in sound, appearance or meaning: "Similarity in *any* of these respects creates a sufficient likelihood of confusion...." 3A R. Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 20.13, at 67 (4th ed. 1983) (emphasis in original).

11. The dominant feature of Defendant's name—the term "AAA"—is virtually identical to Plaintiff's registered marks, and the likelihood of confusion is clear. It is the dominant feature of a name or mark that is most important in gauging the likelihood of confusion. *See James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 572 F.2d 574, 577 (7th Cir.1978). In fact, in similar cases in which the defendant had adopted as the dominant part of its name substantially the identical term used by the plaintiff, summary judgment has been granted for the plaintiff. *See, e.g., Beef/Eater Restaurants, Inc. v. James Burrough Ltd.,* 398 F.2d 637 (5th Cir.1968). The presence of additional words of a common descriptive nature—such as "Insurance Agency"—does not dispel the likelihood of confusion. *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1166 (11th Cir.1982). On the contrary, the presence of additional words describing services related to those of Plaintiff actually increases the likelihood that consumers will conclude mistakenly that Defendant is connected with or licensed by Plaintiff. This is precisely the kind of confusion the trademark laws are intended to prevent. *See Better Business Bureau v. Medical Directors, Inc.,* 681 F.2d 397, 403 (5th Cir.1982); *Professional Golfers Association of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975).

12. In considering the similarity of the marks, it also should be kept in mind that a party, in choosing a name or mark in a field already occupied, has an affirmative duty to avoid all possibility of confusion with existing names and marks. *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 382 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Moreover, any doubts as to confusing similarity are to be resolved against the newcomer. "A newcomer to a product field has a legal duty to select a mark that is totally dissimilar to trademarks already being used in the field." *Jockey International, Inc. v. Burkard,* 185 U.S.P.Q. (BNA) 201, 208 (S.D.Cal.1975). It is apparent in the present case that the Defendant, in adopting the name "AAA" for its insurance business, has breached its duty to avoid any possibility of confusion with Plaintiff's name and marks.

C. *Similarity of Services and Customers.*

13. With regard to the third and fourth of the above-mentioned tests, it has been repeatedly held that neither direct competition between the parties, nor identity of products or services, is necessary for infringement to occur. *Professional Golfers Association of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 669–70 (5th Cir.1975). The Fifth Circuit has consistently rejected the argument that the infringement only occurs when the alleged infringer uses the mark on the same category of product with respect to the present trademark owner. *See Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368, 388 (5th Cir.1977). Instead, the real issue is whether the products or services of the defendant are sufficiently related to those of the plaintiff that they are likely to be associated in some way with the plaintiff if sold under a similar name. Thus, a trademark owner's exclusive rights preclude the use of a similar mark not only on products or services of the kind described in the registration, but also on any others which are likely to be associated with the plaintiff's mark.

14. In the instant case, Plaintiff and Defendant provide the identical service of placing insurance with underwriters. Moreover, their classes of customers are

the same, namely, those persons interested in obtaining insurance coverage, such as life, health, automobile, medical or casualty insurance. This factor therefore points strongly toward a likelihood of confusion.

### D. *Similarities in Advertising Media.*

15. Both Plaintiff and Defendant advertise in the Yellow Pages. Plaintiff also engages in direct mail promotions, while Defendant advertises chiefly through newspaper ads. Because of the minimal nature of Defendant's advertising, this factor does not weigh heavily in the balance.

### E. *Defendant's Knowledge and Intent.*

16. An accused infringer's knowledge or intent in adopting or using a particular mark is another factor bearing on the question of infringement. This factor differs from the others, however, in that its presence weighs heavily against an accused infringer, but its absence does not excuse his actions. *E.g., Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 596–97 (5th Cir.1985). Thus, while the absence of an intent to cause confusion is no defense to a trademark infringement action, *Frostie Co. v. Dr. Pepper Co.,* 341 F.2d 363, 366 (5th Cir. 1965), when the defendant adopts a name or mark with knowledge of the plaintiff's prior use, or expands his use after objection and warning by the plaintiff, infringement is readily found. *See, e.g., Helene Curtis Industries, Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1333–34 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

17. In the present case, Mr. Tipps knew of Plaintiff's service mark rights and its objection to his use of "AAA" shortly after he adopted that name, but he continued to use it in spite of that knowledge. (Finding of Fact 8.) Even assuming that it was not done with the intent to mislead the public, it nevertheless demonstrates a knowing disregard of Plaintiff's rights and the right of the public to be free from confusion. At the very least, it is clear that Defendant

acted at its own risk in continuing to use the "AAA" designation after receiving notice of Plaintiff's service mark rights and registrations. *See Helene Curtis Industries, Inc. v. Church & Dwight Co., supra,* 560 F.2d at 1333–34.

### F. *Actual Confusion.*

18. Since the test of trademark or service mark infringement is the "likelihood" of confusion, evidence of actual confusion is not necessary. *E.g., Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.,* 656 F.2d 186, 191 (5th Cir.1981). It is widely recognized by the courts that reliable evidence of actual confusion is "almost impossible to secure." *Harold F. Ritchie, Inc. v. Chesebrough-Pond's Inc.,* 281 F.2d 755, 761 (2d Cir.1960). Evidence of actual confusion, when it exists, is a strong indicator of the likelihood of confusion. *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44, 45–46 (5th Cir.1975). As the Fifth Circuit said in *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir. 1971): "[R]eason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Accord Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha, supra,* 754 F.2d at 597. It is therefore significant that Defendant's president testified that Defendant receives some two dozen misdirected telephone calls per year. (Finding of Fact 9.) This alone is highly probative of the likelihood of confusion.

19. In light of the foregoing discussion, Plaintiff has more than satisfied the test for infringement. The strength of the "AAA" mark for Plaintiff's insurance services; the use of the identical term by Defendant as the dominant feature of its name; the identical nature of Plaintiff's and Defendant's services and customers; and instances of actual confusion—all are factors pointing to a likelihood of confusion, and therefore to infringement of Plaintiff's service marks.

## II. SECTION 43(a) OF THE LANHAM ACT.

20. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), provides in pertinent part:

> Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce ... shall be liable to a civil action by any person ... who believes that he is or is likely to be damaged by the use of any such false description or representation.

It is settled that an action under Section 43(a) is available to prevent false representations as to the source or origin of goods or services by the use of a name or mark which is confusingly similar to a registered or unregistered mark. *E.g., Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). The test under Section 43(a) therefore is "essentially the same" as that for trademark infringement. *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 192 (5th Cir.1981); *accord Boston Professional Hockey Association, supra*, 510 F.2d at 1013. In fact, the scope of Section 43(a) is even broader than federal trademark infringement, since its protection extends also to unregistered names and marks. *Sun-Fun Products*, 656 F.2d at 192; *Boston Professional Hockey Association*, 510 F.2d at 1010. Accordingly, Defendant's actions also are in violation of Section 43(a) of the Lanham Act.

## III. COMMON LAW UNFAIR COMPETITION.

21. Trademark and service mark infringement are but specific instances of the more broadly defined tort of unfair competition, and the same facts generally support a suit for either. *Boston Professional Hockey Association v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Insofar as the unauthorized use of a party's names and marks is concerned, claims of trademark infringement and unfair competition both are made out when a likelihood of confusion is shown. *Boston Professional Hockey Association*, 510 F.2d at 1010. Defendant's unauthorized use of the "AAA" name therefore constitutes unfair competition as well as service mark infringement.

## IV. THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT.

22. The Court will not reach the issue of liability under the Texas Deceptive Trade Practices-Consumers Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41–63 (Vernon Supp.1985) as the other conclusions of law resolve the issue squarely in Plaintiff's favor.

## V. DEFENDANT'S AFFIRMATIVE DEFENSES.

### A. Laches and Acquiescence.

23. Defendant contends that Plaintiff's claims are barred by laches and acquiescence. However, these are not among the seven defenses to an incontestable registration permitted under 15 U.S.C. § 1115(b). *United States Jaycees v. Chicago Junior Association of Commerce & Industry*, 505 F.Supp. 998, 1000–01 (N.D. Ill.1981), citing *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–85 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). Since Plaintiff's federal registrations are incontestable (Finding of Fact 5), the defenses of laches and acquiescence are not available to Defendant.

24. The defenses of laches and acquiescence are unavailable to Defendant for another reason. These defenses "will not be applied to frustrate the purpose of [the] laws or to thwart public policy." *United States v. Second National Bank*, 502 F.2d 535, 548 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777

(1975). Unlike most other kinds of litigation between private parties, trademark litigation is profoundly affected by considerations of the public interest. Thus, when the likelihood of confusion is not "reasonably in doubt," laches and acquiescence are not available to bar relief. *Cf. Ultra-White Co. v. Johnson Chemical Industries, Inc.,* 465 F.2d 891, 893–94 (C.C.P.A.1972) (trademark cancellation proceeding). In such cases, even a lengthy delay in bringing suit will not bar injunctive relief to protect the public from confusion, although it may bar recovery of damages. *McLean v. Fleming,* 96 U.S. 245, 253, 6 Otto 245, 24 L.Ed. 828 (1877); *Menendez v. Holt,* 128 U.S. 514, 523–24, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888).

■■■ 25. Finally, the defenses of laches and acquiescence fail on the merits. Laches requires a showing of inexcusable delay in asserting a right, reliance thereon by the defendant, and undue prejudice to the defendant resulting from the delay. *See Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1161 (5th Cir.1982). In the present case, Plaintiff notified Defendant in 1970 of its infringement of Plaintiff's federally registered marks shortly after Defendant's first use of "AAA." Defendant acted thereafter at its own risk in continuing to use "AAA." *See Helene Curtis Industries, Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1333–34 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). When Plaintiff learned in 1983 that Defendant was still using the "AAA" mark, Plaintiff again objected and requested that Defendant change its name. When Defendant refused, this action was brought. Throughout the entire period of its use of the "AAA" name, Defendant knew of Plaintiff's objection but continued to use the name anyway. Moreover, Defendant's president testified that nothing that Plaintiff did or failed to do ever affected any business decision of Defendant. (Deposition of Delmer G. Tipps, at 29.) This testimony negates the element of reliance by Defendant that is essential to a claim of laches. *See Citibank, N.A. v. Citibanc*

*Group, Inc.,* 724 F.2d 1540, 1546–47 (11th Cir.1984).

26. Defendant also has failed to show the requisite prejudice necessary for a finding of laches. Defendant has engaged in only minimal advertising and has not expanded beyond a single office in Killeen, Texas. (Finding of Fact 7.) Under the circumstances, whatever prejudice Defendant may incur in discontinuing its use of "AAA" does not outweigh the paramount interest of the public to be free from the likelihood of confusion caused by Defendant's use of "AAA."

■■■ 27. The defense of acquiescence, as distinct from laches, is predicated upon a plaintiff's affirmative conduct indicating active consent to the defendant's actions or intentional abandonment of a right. *See United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61, 72 & n. 7 (N.D.Cal.1972), *aff'd,* 513 F.2d 1226 (9th Cir.1975). Defendant, however, has failed to show any evidence of Plaintiff's affirmative consent to Defendant's use of "AAA." On the contrary, the evidence establishes that Plaintiff objected from the outset to Defendant's use of "AAA," and that Defendant continued its use of that name despite Plaintiff's objection.

#### B. *Plaintiff's Alleged Fraudulent Registration and Illegal Use of "AAA" for Insurance Services in Texas.*

28. Defendant alleges that Plaintiff's Service Mark Registration No. 829,265 for the mark "AAA" was fraudulently obtained, and that its use of "AAA" for insurance services in Texas is illegal, because Plaintiff is not authorized to engage in the insurance business or to act as an insurance agent in the State of Texas. Defendant has failed to prove either of these claims.

■■■ 29. To establish fraud in the registration, Defendant must show that Plaintiff knowingly made a false statement of material fact that would have constituted

grounds for denial of the registration if the truth had been known. *E.g., Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1544 (11th Cir.1984); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 14 (2d Cir.1976). Defendant bears a heavy burden of proof, since an allegation of fraud must be proved by clear and convincing evidence. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 670 (7th Cir.1982); *see also King-Size, Inc. v. Frank's King Size Clothes, Inc.,* 547 F.Supp. 1138, 1166 (S.D.Tex.1982). Defendant has failed to meet that burden of proof.

30. First, Defendant's claim of fraudulent registration is insufficient as a matter of law, since a valid federal registration does not depend upon Plaintiff's authorization to engage in the insurance business in the State of Texas. In order to support an application for federal registration, it is sufficient that a service mark be used in the sale or advertising of services rendered in more than one state or in commerce with a foreign country. 15 U.S.C. § 1127 (1982) (defining "use in commerce" for purposes of federal registration). Since all that is required, therefore, is that Plaintiff's insurance services be rendered in at least two states, Defendant's allegation that Plaintiff is not authorized to engage in the insurance business in Texas is not sufficient to state a claim for fraudulent registration, even if it could be proved. Instead, Defendant must allege and prove that, at the time Plaintiff's application for registration was filed, Plaintiff's insurance services were not rendered in "commerce" as that term is defined in 15 U.S.C. § 1127, and that Plaintiff knowingly misrepresented the facts to the Patent and Trademark Office. This Defendant has not done.

31. In addition to Defendant's failure to allege a valid claim for fraudulent registration, Defendant's allegations are not supported by the facts. The evidence shows that Plaintiff's related company, Texas Club Service Agency, Inc., is licensed to act as an insurance agent in the State of Texas. (Finding of Fact 3.) Under the Lan-

ham Act, the use of a mark by a related company inures to the benefit of the registrant or applicant for registration. 15 U.S.C. § 1055, 1127 (1982).

32. For the same reason, Defendant's claim that Plaintiff's use of "AAA" for insurance services in Texas is illegal must fail, since that use is made through Plaintiff's related company, Texas Club Service Agency, Inc., and other affiliated agents, all of whom are duly licensed as insurance agents in the State of Texas.

### C. *Defendant's Incorporation and Licensing in Texas.*

33. The fact that Defendant's name was accepted by the State Board of Insurance or by the Secretary of State for incorporation in Texas does not affect Plaintiff's service mark rights. The acceptance or approval of a name by a state agency is no defense to an action for infringement or unfair competition. *E.g., Foxtrap, Inc. v. Foxtrap, Inc.,* 671 F.2d 636, 640 n. 7 (D.C.Cir.1982) ("this circuit, following the general rule, has declined to accord any weight to a state agency's general acceptance of a corporate name"). In *Children's Bootery v. Sutker,* 91 Fla. 60, 107 So. 345, 349, 44 A.L.R. 698, 705 (1926), the Florida Supreme Court made the following cogent observations (emphasis added):

> The grant of a corporate charter by the state can confer no power to perpetrate wrong. The act of sovereignty in allowing incorporation under a particular name is permissive only. It sanctions the act of incorporation under the name chosen and for the business proposed, *if that name and that business be otherwise lawful,* but in granting a corporate charter the sovereign adjudges neither the legality of the business nor of the name chosen. That is a matter for judicial determination by a court of competent jurisdiction.

Moreover, a foreign corporation need not itself be licensed or qualified to do business in the state in order to be entitled to relief. *Radio Shack Corp. v. Radio Shack, Inc.,*

180 F.2d 200, 204–05 (7th Cir.1950); *Great Western Financial Corp. v. Great Western Savings & Loan Association*, 406 F.Supp. 1286, 1291–92 (W.D.Okla.1975).

34. The foregoing judicial pronouncements are completely in accord with Texas policy and practice as embodied in the Texas Administrative Code. With regard to corporate name availability, the Texas Administrative Code provides as follows:

> Only the proposed corporate name and the names of active ... corporations on file are considered in determining name availability. Among the matters *not* considered are the following:
>
> ....
>
> (10) Whether the applicant has a prior or superior right to the use of a name apart from what might be shown on inspection of the names of active corporations on file in the corporate records of the secretary of state.
>
> (11) Whether infringement or unfair trade practice has occurred or might occur.

Texas Admin.Code tit. 1, § 79.48 (1982) (emphasis added). Thus, the Secretary of State of Texas does not even purport to screen proposed names for potential infringement of existing rights. Moreover, the State Board of Insurance does not make an independent evaluation of the name of a corporation seeking a license to act as an insurance agent, but relies instead upon the corporate charter from the Secretary of State. *See* Tex.Ins.Code Ann. art. 21.07, sec. 2(b)(1) (Vernon 1981).

35. In any event, it is settled that state law cannot defeat or limit in any way the protection given to federally registered marks under the Lanham Act. Any state law that would infringe on the registrant's right to the exclusive use of its mark is preempted by federal law. *E.g., Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir.1980). The Lanham Act specifically provides that "[t]he intent of this chapter is ... to protect registered marks used in [interstate] commerce from interference by State, or territorial legislation." 15 U.S.C. § 1127 (1982). Since Defendant can ac-

quire no rights under state law superior to Plaintiff's federal service mark rights, *see, e.g., John R. Thompson Co. v. Holloway*, 366 F.2d 108, 114–16 (5th Cir.1966), neither Defendant's incorporation in Texas under the name "AAA Insurance Agency, Inc.," nor acceptance of that name by the State Board of Insurance, constitutes a defense to this action for infringement.

36. Finally, it is admitted that Plaintiff's federal service mark registrations for "AAA" are incontestable. (Finding of Fact 5.) Since incorporation or licensing by a state agency is not one of the defenses to an incontestable registration permitted under 15 U.S.C. § 1115(b), that defense is not available to Defendant. *Cf. Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184–85 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

37. Defendant has failed to establish any of the asserted defenses to Plaintiff's claims of infringement and unfair competition, and Plaintiff is entitled to injunctive relief.

## VI. DEFENDANT'S COUNTERCLAIM.

38. Defendant has counterclaimed for costs and attorneys' fees under Section 17.-50(c) of the Texas Deceptive Trade Practices-Consumer Protection Act, on grounds that Count IV of Plaintiff's complaint to enjoin Defendant's violation of that Act is groundless and was brought in bad faith and for purposes of harassment. Defendant's claim is without merit.

39. Defendant's claim also is insufficient as a matter of law, since a claim for costs and attorneys' fees under Section 17.-50(c) of the DTPA is limited to actions by consumers arising under the DTPA. It is undisputed that Plaintiff is not a consumer under the DTPA, and Count IV of Plaintiff's complaint arises under Texas common law. Accordingly, Section 17.50(c) has no application here, and Defendant's counterclaim fails to state a proper claim for relief.

40. Any conclusion of law which is deemed to be a finding of fact is hereby adopted as such.

### RELIEF

Based upon the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED:

1. Defendant and its officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are permanently enjoined from engaging in any of the following acts:

(a) Using the designation "AAA" in any form, or any other name or mark confusingly similar to "AAA," either alone or in combination with other words or symbols, in the marketing, sale, distribution, promotion, advertising, identification, or in any other manner in connection with any insurance business or services; and

(b) Using any multiple combination of letters "A" in any form or manner that would tend to identify or associate Defendant or its business or services with Plaintiff (including, without limitation, any multiple combination of letters "A" in which the central or interior "A" or "A's" are larger or in bolder print than the remaining letters, or any multiple combination of letters "A" in conjunction with an oval or circle design) in the marketing, sale, distribution, promotion, advertising, identification, or in any other manner in connection with any insurance business or services.

2. Defendant may use its presently existing supplies of business forms bearing the designation "AAA" for a period not to exceed one year from the date of entry of judgment in this case. In all other respects, Defendant shall promptly comply with the terms of the foregoing injunction, and Defendant shall be in full compliance within thirty (30) days after the entry of judgment.

3. Within forty-five (45) days after the entry of judgment in this case, Defendant shall file with the Court and serve on Plaintiff's attorney a report in writing under oath setting forth the actions taken by Defendant to comply with the terms of the judgment.

4. Pursuant to 15 U.S.C. § 1117 and Rule 54(d) of the Federal Rules of Civil Procedure, Plaintiff is awarded its costs of suit. Each party shall bear its own attorneys' fees.

5. Defendant's counterclaim is dismissed with prejudice.

6. Judgment shall be entered in accordance with the terms of this order.