**SERVICE MERCHANDISE COMPANY**

v.

**SERVICE JEWELRY STORES, INC., et al.**

**Civ. A. No. H–89–2820.**

United States District Court, S.D. Texas, Houston Division.

Jan. 5, 1990.

Final Judgment and Injunction April 10, 1990.

John Russell Feather, Houston, Tex., for Service Merchandise Co.

Alton W. Payne Jr., Bellaire, Tex., for Service Jewelry Stores, Inc. and Evangelos Kanaris.

## PRELIMINARY INJUNCTION

DeANDA, Chief Judge.

Pending before the Court is Plaintiff Service Merchandise Company's motion for a preliminary injunction. Plaintiff filed its original complaint on August 22, 1989 seeking injunctive and monetary relief against Defendants Service Jewelry Stores, Inc. and Evangelos Kanaris for alleged violations of 15 U.S.C. Sec. 1114 (prohibiting service mark infringement), 15 U.S.C. Sec. 1125(a) (prohibiting a false designation of origin or false description of services), Tex. Bus. and Comm.Code Sec. 16.29 (added by Acts 1989, 71st Leg.Reg.Sess., Ch. 932) (prohibiting injury to business reputation or dilution of a service mark), and the common law of Texas prohibiting service mark infringement. Plaintiff filed the present motion seeking preliminary injunctive relief on October 26, 1989, and the Court conducted an evidentiary hearing on the matter on November 21 and 22, 1989. Now, after reviewing the evidence presented and the applicable law, the Court concludes that Plaintiff's motion for a preliminary injunction should be granted as is more fully explained by the findings of fact and conclusions of law below.

## FINDINGS OF FACT

1. Plaintiff is a Tennessee corporation with its principal place of business located in Nashville, Tennessee. Plaintiff opened its first "Service Merchandise" store in Nashville, Tennessee in 1960, and registered its service mark of SERVICE MERCHANDISE and design with the United States Patent Office for the first time on November 8, 1977. Plaintiff now owns and operates approximately 340 "Service Merchandise" retail stores across the country, with 37 stores in Texas and 7 stores in the Houston, Texas area.

2. Defendant Service Jewelry Stores, Inc. is a Texas corporation that owns and operates 3 jewelry stores in Houston, Texas: One store at Memorial City Mall (opened in 1987), one store at Northline Mall (opened in August of 1989), and one store at Gulfgate Mall (still under construction, not yet open).

3. Defendant Evangelos Kanaris is a natural person residing in Houston, Harris County, Texas, who operates Service Jewelry Stores, Inc. and works as a jewelry designer in the stores.

4. Plaintiff sells a variety of goods, but it particularly emphasizes its selection of jewelry by virtually always displaying featured jewelry items in the first several pages of an advertisement. *See* Plaintiff's Exhibits 16, 17, 19, and 20 and Defendant's Exhibit 12. Although Defendants contended otherwise, the evidence shows that Plaintiff provides jewelry repair and custom-design services as a part of its usual operations. *See* Plaintiff's Exhibit 30.

5. Plaintiff's expected gross income for 1989 is approximately 3 billion dollars, of which approximately 900 million dollars will be derived from the sale or service of jewelry. In the Houston, Texas area, Plaintiff's expected gross income is approximately 50 million dollars, of which approximately 15 to 20 million dollars will be derived from the sale or service of jewelry.

6. Plaintiff advertises via newspaper, direct mail fliers, radio and television. Each year, Plaintiff spends approximately 300 million dollars for advertising, of which approximately 2.7 million dollars is expended for advertising in the Houston, Texas area.

7. Defendant Service Jewelry Stores, Inc. concentrates solely on jewelry sales and service. Approximately 60% of its business is devoted to jewelry service or repair, and approximately 40% of its business is devoted to the retail sale of jewelry. Approximately 90% of the jewelry Defendant sells is custom made by Defendant.

8. Defendant Service Jewelry Stores, Inc.'s expected annual gross income is approximately 200,000.00 dollars, and its annual advertising budget is approximately 10,000.00 dollars.

9. Plaintiff has registered the following service marks with the United States Patent and Trademark Office for use in connection with retail store services:

| MARK | REG. NO. | REG. DATE |
|---|---|---|
| SERVICE MERCHANDISE and design | 1,077,145 | November 8, 1977 |
| SERVICE MERCHANDISE and design | 1,431,570 | March 3, 1987 |
| SERVICE MERCHANDISE YOUR STORE and design | 1,432,458 | March 10, 1987 |
| MR. SERVICE | 1,480,163 | March 8, 1988 |

Registration number 1,077,145 has become incontestable because Plaintiff filed, and the United States Patent and Trademark Office accepted, an affidavit in conformity with 15 U.S.C. Sec. 1065. *See* Plaintiff's Exhibit 22.

10. Plaintiff originally designed its service mark with the word "Service" in script letters set above the word "MERCHANDISE" in capital non-script letters. *See* Plaintiff's Exhibit 18. In 1977, Plaintiff changed the design of its mark so that both words of "SERVICE MERCHANDISE" appeared in all capital non-script letters, with the letters "S" and "M" appearing in bold print and surrounded by the shape of a diamond. This design was registered as number 1,077,145. *See* Plaintiff's Exhibit 21. In 1985, Plaintiff changed the design of its mark once again so that the word "Service" appeared in script letters approximately twice the size of the non-script letters in the word "MERCHANDISE" immediately below. This design was registered as number 1,431,570, and it is prominently displayed to identify Plaintiff's stores and advertising. *See* Plaintiff's Exhibits 1, 4, 16, 17, and 23. The design of service mark number 1,432,458 is the same as that for number 1,431,570 except for the appearance of the words "Your store" immediately below the "Service Merchandise" design. *See* Plaintiff's Exhibit 24. Service mark number 1,480,163, "MR. SERVICE," appears in capital non-script letters, with no additional design. The word "Service" typically appears in red, unless mall regulations require all merchants to use some other color.

11. Defendant Evangelos Kanaris originally conducted his jewelry business under

the trade name of "Vera and Vagos." However, in 1987, Kanaris opened a store in Memorial City Mall under the trade name of "Discovery Jewelry Exchange," with a tag line of "Service Jewelry Store." Sometime between 1987 and 1989, Kanaris incorporated Defendant Service Jewelry Stores, Inc. In August of 1989, Service Jewelry Stores, Inc. opened its store in Northline Mall to operate exclusively under the trade name of "Service Jewelry Store." Defendant's store in Gulfgate Mall, not yet open, is also expected to operate exclusively under the trade name of "Service Jewelry Store." The sign identifying Defendants' Northline Mall and Gulfgate Mall stores has the word "Service" appearing in red script letters followed by the words "JEWELRY STORE" in slightly smaller non-script blue capital letters.

12. There is no dispute in the evidence that Defendants have used the name "Service Jewelry Store" without the consent of Plaintiff in commerce in connection with the sale, offering for sale, distribution or advertising of goods. Although Defendants contend that the name "Service Jewelry Store" does not constitute a reproduction, counterfeit, copy or colorable imitation of Plaintiff's marks, this dispute is easily resolved in Plaintiff's favor. Defendants' trade name is at least a colorable imitation of Plaintiff's marks. The most difficult aspect of this case is the question of whether Defendants' use of the trade name "Service Jewelry Store" is likely to cause confusion or to deceive.

13. The Court finds that Plaintiff's service mark is neither weak nor strong. Defendants attempted to show that Plaintiff's mark is weak by introducing evidence that: (1) 10 other local jewelers use the word "Service" in their Greater Houston Southwestern Bell Yellow Pages advertisements (Defendants' Exhibit 2); (2) 37 other jewelers nationwide use the word "Service" in their tradename (Defendants' Exhibit 4); and (3) there are 226 similar registered service marks beginning with the word "Service." (Defendants' Exhibit 3.) Defendants' Exhibit 2, which reveals 10 other jewelers in the Houston area who use the word "Service" in their advertisements, is

not evidence of weakness in Plaintiff's mark because the word "Service" is never used as part of any of the local jewelers' tradenames. Instead, the word "Service" is simply used in the advertisements to describe the services available at each jeweler. Defendants' Exhibit 3, which lists 226 similar registered marks beginning with the word "Service," likewise does not support Defendants' claim that Plaintiff's mark is weak because Defendants did not introduce any evidence showing that any of the 226 marks listed are used by companies in the retail jewelry sales and service business. However, Defendants' Exhibit 4, which lists 37 jewelers nationwide who use the word "Service" in their tradename, is some evidence of weakness in Plaintiff's mark. Nevertheless, this evidence is not sufficient to render Plaintiff's mark weak because none of the tradenames listed in Defendants' Exhibit 4 begin with the word "Service" as Plaintiff's mark does. Finally, the Court does not consider Plaintiff's marks to be weak because the Court finds that Plaintiff's marks are properly categorized as "suggestive" marks, not generic or merely descriptive. Although the component words of Plaintiff's mark "Service Merchandise" may be descriptive or even generic, taken together they do not refer to a genus of which a particular service is a species, nor do they directly describe Plaintiff's services. Although Plaintiff may aspire to provide good service to its customers in the sale of merchandise, it does not simply service merchandise. Any connection between Plaintiff's service mark and its actual business of retail sales and service requires at least some exercise of imagination on the part of the consumer.

14. Despite Defendants' protestations, the Court finds a high degree of similarity between Plaintiff's and Defendants' marks. Both marks begin with the word "Service" in red script letters that are larger than the words following in non-script letters. Although Defendants follow the word "Service" with the phrase "Jewelry Store" instead of "Merchandise," this difference is not genuinely significant in light of the

well-known association of Service Merchandise stores with jewelry sales and service.

15. Again, although Defendants strenuously argued that they provide services significantly different from those provided by Plaintiff, the evidence reveals that the sales and services provided by Plaintiff and Defendants are indeed quite similar. Both Plaintiff and Defendants sell and service jewelry, and both provide custom jewelry design services. The Court recognizes that Defendants provide more extensive custom design services and that Defendants sell no other merchandise as Plaintiff does. Nevertheless, these differences do not overcome the similarities in the parties' services.

16. Plaintiff and Defendants compete to serve the same customers, i.e., those customers who seek to purchase jewelry or have an item of jewelry repaired. In fact, each of the three customers Defendants called to testify at the preliminary injunction hearing had shopped at both Plaintiff's and Defendants' stores.

17. Plaintiff's and Defendants' advertising is not similar. As already indicated, Plaintiff devotes considerably more resources to advertising than Defendants do. According to the evidence, Defendants' advertising was limited to giving out balloons at one of the malls and a single black and white advertisement in a local newspaper insert. Plaintiff, on the other hand, virtually always advertises via multi-page full-color advertisements.

18. The evidence was insufficient to show that Defendants intended to take advantage of the goodwill associated with Plaintiff's service mark. Although the Court finds the similarity of Plaintiff's and Defendants' marks to be striking and the proximity of Defendants' store to Plaintiff's to be a disturbing coincidence, Defendants offered credible testimony that they did not intend to engage in any prohibited activity.

19. Defendants' use of the tradename "Service Jewelry Store" has caused actual confusion on several occassions. Some customers have asked Plaintiff's managers when Plaintiff's "new" store was going to open (referring to Defendants' stores); some customers have asked Plaintiff's managers where they could get the balloons that Defendants were handing out to promote their own store; one job applicant contacted Plaintiff when in fact he was seeking employment with Defendants; and the postal service has delivered mail to Plaintiff that was intended for Defendants. Defendants' attempt to rebut Plaintiff's evidence of actual confusion by calling three customers who were not confused by Defendants' tradename was not persuasive because each of the customers admitted that she had known of Defendants' services long before Defendants began using the tradename "Service Jewelry Store."

20. In light of all the factors considered in paragraphs 13 through 19 above, the Court finds that Defendants' use of the tradename "Service Jewelry Store" is likely to cause confusion, or to cause mistake or to deceive. Defendants' use of the tradename "Service Jewelry Store" is also likely to dilute the distinctive quality of Plaintiff's registered marks.

21. Defendants' use of the word "Service" in their tradename is not a "fair use" because they are using the word "Service" as a service mark. The Court finds that Defendants are using the term "Service" within their tradename as a means to identify and distinguish their services from others, not simply to describe their services.

22. The Court's findings reveal that Plaintiff has a substantial likelihood of success on the merits at the ultimate trial of this case. Plaintiff faces irreparable harm because it cannot control the quality of Defendants' products or services. Plaintiff's goodwill may be damaged where customers are dissatisfied with the quality of the product or service they receive from Defendants yet associate that experience with Plaintiff's service mark. Moreover, the threatened injury to Plaintiff outweighs that faced by Defendants. Defendants' continued use of the tradename "Service Jewelry Store" threatens to undermine the effectiveness of millions of dollars worth of advertising and decades of goodwill. Defendants, on the other hand,

have only recently begun using the trade-name "Service Jewelry Store" and have made a minimal investment in advertising. Finally, the Court finds that public policy would be served by the issuance of an injunction where, as in this case, the injunction is in the aid of enforcing a federal statutory right and is in the aid of legitimate commerce.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over Plaintiff's federal service mark infringement claim and false designation of origin claim pursuant to 15 U.S.C. Sec. 1121 and 28 U.S.C. Sec. 1338. The Court has pendent subject matter jurisdiction over Plaintiff's state-law claims for violations of the common law of Texas and Tex.Bus. and Comm.Code Sec. 16.29. Both Defendants are Texas residents and have not asserted any objections to venue or personal jurisdiction in this Court.

2. The Court should grant a preliminary injunction in a service mark infringement action only where the plaintiff carries its burden of showing: (1) a substantial likelihood that it will prevail on the merits at trial; (2) irreparable injury to itself absent injunctive relief; (3) threatened injury to itself that outweighs any harm an injunction would cause the defendants; and (4) the issuance of an injunction would not be contrary to the public interest. *The Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

3. In order to state a claim for service mark infringement, the holder of a registered service mark must show that another person is using (or has used) (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. 15 U.S.C. Sec. 1114(1)(a); *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009-10

(5th Cir.1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

4. In determining whether there is a likelihood of confusion, the Court should consider the following factors: (1) the type, or strength, of Plaintiff's mark; (2) the degree of similarity between Plaintiff's and Defendants' marks; (3) the similarity of Plaintiff's and Defendants' goods or services; (4) the identity of Plaintiff's and Defendants' retail stores and customers; (5) the similarity of Plaintiff's and Defendants' advertising; (6) the Defendants' intent; and (7) the existence of actual confusion. *Soweco, Inc. v. Shell Oil Company*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir.1975). It is sufficient if Plaintiff shows that any of these factors demonstrate a likelihood of confusion; it is not necessary for Plaintiff to show that all, or a majority, of these factors are present in this case. *See Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159-60 (5th Cir.1982); *American Automobile Association (Inc.) v. AAA Insurance Agency, Inc.*, 618 F.Supp. 787 (W.D.Tex. 1985).

5. The type, or strength, of a mark is determined by its distinctiveness. While some courts consider how often a mark is used by parties other than the owner of the mark, *see Exxon Corporation v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir.1980), others simply try to determine which "pigeon hole" the mark belongs in, *e.g.*, generic, descriptive, suggestive, or arbitrary or fanciful. *See AAA*, 618 F.Supp. at 792. A "generic" term is one that refers to the genus of which a particular product or service is a species; such a term is not registrable, and a registered mark may be cancelled at any time on the grounds that it has become generic. 15 U.S.C. Sec. 1052(e), 1064(c); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). A "descriptive" mark is one that describes the qualities or characteristics of a good or service; such a mark may be registered only if the registrant shows that

the mark has acquired secondary meaning, *i.e.,* has become distinctive of the applicant's goods in commerce. 15 U.S.C. Sec. 1052(e), (f); *Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. at 661. A "suggestive" mark suggests some characteristic of the goods or services to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of the goods or services. *Soweco,* 617 F.2d at 1184. An "arbitrary" or "fanciful" mark bears no relationship to the product or service with which it is associated. *Id.* A service mark that is commonly used by other parties in the same business or is merely descriptive is considered "weak," whereas a mark that is rarely used by parties in the same business other than the registrant or is suggestive or fanciful is considered "strong."

6. The similarity of appearance of marks is determined by an "eyeball" test in which the prominence of certain words is important and which emphasises the total effect rather than individual features. *Exxon Corp.,* 628 F.2d at 504. Plaintiff need not show that the marks are identical to establish infringement. *AAA,* 618 F.Supp. at 792.

7. Evidence of actual confusion caused by a similar mark is not conclusive or required, but it is the best evidence of the likelihood of confusion. *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

8. Proof of registration of a service mark with the United States Patent and Trademark Office constitutes prima facie evidence of the registrant's exclusive right to use the registered mark in commerce for the services specified in the registration, but it does not preclude an opposing party from "proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered." 15 U.S.C. Sec. 1115(a); *Soweco,* 617 F.2d at 1184. However, where, as in this case, the registrant has used its mark in connection with the services specified in its registration for five continuous years after the registration date and filed an appropriate affidavit, the mark is deemed "incontestable." 15 U.S.C. Sec. 1065. The registration of an incontestable mark constitutes conclusive evidence of the registrant's exclusive right to use the mark in commerce for the services specified in the affidavit, subject only to seven defenses enumerated by 15 U.S.C. Sec. 1115(b) and the limitations of Section 1065 itself. *See Soweco,* 617 F.2d at 1184.

9. Although Defendants may argue that Plaintiff's mark is generic and not entitled to any protection, *see* 15 U.S.C. Sec. 1064(c), 1065, they may not avoid liability for infringement of Plaintiff's incontestable mark by asserting that it is merely descriptive. *Park 'N Fly,* 469 U.S. at 205, 105 S.Ct. at 667. A mark that has become incontestable is effectively deemed to be either suggestive or, if descriptive, it is deemed to have secondary meaning. This case presents a slightly unusual situation insofar as only one of Plaintiff's three registered marks containing the phrase "Service Merchandise" has become technically incontestable. Plaintiff argues, and the Court agrees, that Defendants are precluded from asserting that the two non-incontestable "Service Merchandise" marks are merely decriptive. Although the three marks are composed of slightly different designs and one has the additional phrase "your store" appended to it, the relevant phrase of "Service Merchandise" is common to each mark. It would be illogical to allow Defendants to claim that the phrase "Service Merchandise" is merely descriptive with respect to the non-incontestable marks while the law conclusively presumes that the same phrase is *not* merely descriptive with respect to the incontestable mark. *See In re American Sail Training Association,* 230 U.S.P.Q. 879 (T.T.A.B.1986).

10. Defendants correctly point out that Plaintiff disclaimed the exclusive right to use the word "Service" separate and apart from its mark number 1,077,145. However, even if the word "Service" constituted an unregistrable generic term, it remains true that words that could not individually become a trademark may become one when taken together. *Union Carbide Corporation v. Ever–Ready Incorporated,*

531 F.2d 366, 379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). In determining whether "Service Merchandise" constitutes a generic term, the Court must look to the totality of the phrase, not its component parts.

11. One of the permissible defenses to a claim of infringement of an incontestable mark is that a party's use of the relevant term constitutes "fair use." 15 U.S.C. Sec. 1115(b)(4); *Soweco,* 617 F.2d at 1185. This defense is available if Defendants can show that their use of the term: (1) is not as a service mark; (2) is descriptive of the services they provide; and (3) is fair and in good faith. *Id.* A term is used a a service mark if it is used in the sale or advertising of services to identify and distinguish the services of one person from another. 15 U.S.C. Sec. 1127.

12. The test for a violation of 15 U.S.C. Sec. 1125(a) is essentially the same as that for service mark infringement. *Sun–Fun Products, Inc. v. Suntan Research & Development Inc.,* 656 F.2d 186, 192 (5th Cir. 1981); *AAA,* 618 F.Supp. at 795.

13. Tex.Bus. and Comm.Code Sec. 16.29 has only been effective since June 14, 1989; therefore, there is not yet any clear authority on the precise contours of its application. Section 16.29 provides:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services. An injunction sought under this section shall be obtained pursuant to Rule 680 et seq. of the Texas Rules of Civil Procedure.

Section 16.29 offers broader protection for Plaintiff's service marks than federal law because it authorizes relief "regardless of whether there is competition between the parties or confusion as to the source of goods or services."

14. Although Plaintiff has provided authorities regarding the elements necessary for the issuance of an injunction under state common law, it did not provide any authorities regarding the elements necessary to show common law service mark infringement. Presumably, Plaintiff is content to rely on its federal claims and its state statutory claim for the purposes of this proceeding.

15. The Court may not issue a preliminary injunction without requiring Plaintiff to post security for the payment of costs and damages as may be incurred by Defendants if they are ultimately found to have been wrongfully enjoined. Fed.R.Civ.P. 65(c). Accordingly, it is hereby

ORDERED that Defendants are PRELIMINARILY ENJOINED pending the final trial on the merits of this case from using the tradename "Service Jewelry" or "Service Jewelry Store" in connection with the distribution, advertising, sales, or service of jewelry. It is further

ORDERED that this preliminary injunction shall not be effective until Plaintiff posts a bond or other appropriate security in the amount of $20,000.00 dollars payable to Defendants in the event it is determined that this injunction was wrongfully issued. It is further

ORDERED that Defendants shall file with the Court and serve on Plaintiff within thirty days of the entry of this preliminary injunction a written report under oath setting forth in detail the manner and form in which they have complied with this injunction.

## FINAL JUDGMENT AND INJUNCTION

Pending before the Court is the Joint Motion by the parties for entry of a final judgment and permanent injunction. Plaintiff filed its original complaint on August 22, 1989 seeking injunctive and monetary relief against Defendants Service Jewelry Stores, Inc. and Evangelos Kanaris for alleged violations of 15 U.S.C. Sec. 1114 (prohibiting service mark infringement), 15 U.S.C. Sec. 1125(a) (prohibiting a false designation of origin or false description of services), Tex.Bus. and Comm.Code, Sec. 16.29 (added by Acts 1989, 71st Leg.Reg. Sess., Ch. 932) (prohibiting injury to busi-

ness reputation or dilution of a service mark), and the common law of Texas prohibiting service mark infringement. Plaintiff filed the present motion seeking preliminary injunctive relief on October 26, 1989, the Court conducted an evidentiary hearing on the matter on November 21 and 22, 1989, and an order was entered on January 5, 1990 granting such relief. Now, the parties jointly move the Court for entry of a Final Judgment granting that same relief on a permanent basis, and after reviewing the evidence presented and the applicable law, the Court concludes that the joint motion for a final judgment and permanent injunction should be granted as is more fully explained by the findings of fact and conclusions of law below.

## FINDINGS OF FACT

1. Plaintiff Service Merchandise Company, Inc. is a Tennessee corporation having a principal place of business located in Nashville, Tennessee. Plaintiff opened its first "Service Merchandise" store in Nashville, Tennessee in 1960, and registered its service mark Service Merchandise and Design with the United States Patent and Trademark Office for the first time on November 8, 1977. Plaintiff now owns and operates approximately 304 "Service Merchandise" retail stores across the country, with 37 stores in Texas and seven stores in the Houston, Texas area.

2. Defendant Service Jewelry Stores, Inc. is a Texas corporation that owns and operates two jewelry stores in Houston, Texas: one store at Northline Mall (opened in August of 1989) and one store at Gulfgate Mall (opened in November of 1989).

3. Defendant Evangelos Kanaris is a natural person residing in Houston, Harris County, Texas, who operates Service Jewelry Stores, Inc. as the General Manager of that entity and works as a jewelry designer in both stores.

4. Plaintiff sells a variety of goods, but it particularly emphasizes its selection of jewelry by virtually always displaying featured jewelry items in the first several pages of its advertisements. Although Defendants contended otherwise, the evidence shows that Plaintiff provides jewelry repair and custom-design services as a part of its usual operations.

5. Plaintiff's expected gross income for 1989 is approximately three (3) billion dollars, of which approximately nine hundred (900) million dollars will be derived from the sale or service of jewelry. In the Houston, Texas area, Plaintiff's expected gross income is approximately fifty (50) million dollars, of which approximately fifteen (15) to twenty (20) million dollars will be derived from the sale or service of jewelry.

6. Plaintiff advertises via newspaper, direct mail flyers, radio and television. Each year, Plaintiff spends approximately three hundred (300) million dollars for advertising, of which approximately 4 to 7 million dollars is expended for advertising in the Houston, Texas area.

7. Defendant Service Jewelry Stores, Inc. concentrates solely on jewelry sales and service. Approximately sixty percent (60%) of its business is devoted to jewelry service or repair, and approximately forty percent (40%) of its business is devoted to the retail sale of jewelry. Approximately ninety percent (90%) of the jewelry Defendant sells is custom made by Defendant.

8. Defendant Service Jewelry Stores, Inc.'s expected annual gross income is approximately two hundred thousand (200,000) dollars, and its annual advertising budget is approximately ten thousand (10,000) dollars.

9. Plaintiff has registered the following service marks with the United States Patent and Trademark Office for use in connection with retail store services:

| MARK | REG. NO. | REG. DATE |
|---|---|---|
| SERVICE MERCHANDISE and Design | 1,077,145 | 11/8/1977 |
| SERVICE MERCHANDISE and Design | 1,431,570 | 3/3/1987 |
| SERVICE MERCHANDISE YOUR STORE and Design | 1,432,458 | 3/10/1987 |
| MR. SERVICE | 1,480,163 | 3/8/1988 |

Registration No. 1,077,145 has become incontestable because Plaintiff filed, and the United States Patent and Trademark Office accepted, an affidavit in conformity with 15 U.S.C. § 1065.

10. Plaintiff originally designed its service mark with the word "SERVICE" in script letters set above the word "MERCHANDISE" in capital non-script letters. Plaintiff changed the design of its mark so that both of the words Service Merchandise appeared in all capital non-script letters, with the letters S and M appearing in bold print and surrounded by the shape of a diamond. This design was registered as number 1,077,145. In 1985, Plaintiff changed the design of its mark once again so that the word "SERVICE" appeared in script letters approximately twice the size of the non-script letters with the word "MERCHANDISE" immediately below. This design was registered as number 1,431,570, and it is prominently displayed to identify Plaintiff's stores and advertising. The design of service mark number 1,432,458 is the same as that for number 1,341,570 except for the appearance of the words "Your Store" immediately below the "Service Merchandise" design. Service mark number 1,480,163, Mr. Service, appears in capital non-script letters, with no additional design. The word "Service" typically appears in red, unless mall regulations require all merchants to use some other color.

11. Defendant Evangelos Kanaris originally conducted his jewelry business under the trade name of "Vera and Vagos". However, in 1987, a corporation by the name of Discovery Jewelry Exchange, Inc. was formed which opened a store in Memorial City Mall under the trade name of "Discovery Jewelry Exchange", with a tag line of "Service Jewelry Store". Defendant Kanaris became the General Manager of that corporation responsible for operating that store. That tag line was displayed on a flashing electronic sign and appeared on the business cards distributed by Defendant Kanaris.

12. In May of 1989, Service Jewelry Stores, Inc. was incorporated by Verica Kanaris Banjac, and Defendant Kanaris became the General Manager of that entity. In August of 1989, Service Jewelry Stores, Inc. opened its store in Northline Mall to operate exclusively under the trade name "Service Jewelry Store" until entry of the preliminary injunction on January 5, 1990. Defendants' store in Gulfgate Mall opened in November of 1989 and also operated exclusively under the trade name of "Service Jewelry Store" until entry of the preliminary injunction of January 5, 1990. Until entry of the preliminary injunction on January 5, 1990, the sign identifying Defendants' Northline Mall and Gulfgate Mall stores had the word "Service" appearing in red script letters followed by the words "Jewelry Store" in slightly smaller non-script blue capital letters.

13. There is no dispute in the evidence that Defendants have used the name "Service Jewelry Store" without the consent of Plaintiff in commerce in connection with the sale, offering for sale, distribution and advertising of goods. Although Defendants contend that the name "Service Jewelry Store" does not constitute a reproduction, counterfeit, copy or colorable imitation of Plaintiff's marks, this dispute is easily resolved in Plaintiff's favor. Defendants' trade name is at least a colorable imitation of Plaintiff's marks. The most difficult aspect of this case is the question of whether Defendants' use of the trade name "Service Jewelry Store" is likely to cause confusion or to deceive.

14. The Court finds that Plaintiff's service mark is neither weak nor strong. Defendants attempted to show that Plaintiff's mark is weak by introducing evidence that: (1) ten (10) other local jewelers use the word "service" in their Greater Houston Southwestern Bell Yellow Pages advertisements; (2) thirty-seven (37) other jewelers nationwide use the word "service" in their trade name; (3) there are two hundred twenty-six (226) similar registered service marks beginning with the word "service". Defendants' Exhibit 2, admitted in evidence at the hearing on Preliminary Injunction, which reveals ten (10) other jewelers in the Houston area who use the word "service" in their advertisements, is not evidence of weakness of Plaintiff's mark because the word "service" is never used as part of any of the local jewelers' trade names. Instead, the word "service" is simply used in the advertisements to

describe the services available at each jeweler. Defendants' Exhibit 3, which lists two hundred twenty-six (226) similar registered marks beginning with the word "service", likewise does not support Defendants' claim that Plaintiff's mark is weak because Defendants did not introduce any evidence showing that any of the two hundred twenty-six (226) trade names listed are used by companies in the retail jewelry sales and service business. However, Defendants' Exhibit 4, which lists thirty-seven (37) jewelers nationwide who use the word "service" in their trade name is some evidence of weakness in Plaintiff's mark. Nevertheless, this evidence is not sufficient to render Plaintiff's mark weak because none of the trade names listed in Defendants' Exhibit 4 begin with the word "service" as Plaintiff's mark does. Finally, the Court does not consider Plaintiff's marks to be weak because the Court finds that Plaintiff's marks are properly categorized as "suggestive" marks, not generic or merely descriptive. Although the component words of Plaintiff's marks Service Merchandise may be descriptive or even generic, taken together they do not refer to a genus of which a particular service is a species, nor do they directly describe Plaintiff's services. Although Plaintiff may aspire to provide good service to its customers in the sale of merchandise, it does not simply service merchandise. Any connection between Plaintiff's service mark and its actual business of retail sales and service requires at least some exercise of imagination on the part of the consumer.

15. Despite Defendants' protestations, the Court finds a high degree of similarity between Plaintiff's and Defendants' marks. Both marks begin with the word "Service" in red script letters that are larger than the words following in nonscript letters. Although Defendants follow the word "Service" with the phrase "Jewelry Store" instead of "Merchandise", this difference is not genuinely significant in light of the well-known association of Service Merchandise stores with jewelry sales and service.

16. Again, although Defendants strenuously argued that they provide services significantly different from those provided by Plaintiff, the evidence reveals that the sales and services provided by Plaintiff and Defendants are indeed quite similar. Both Plaintiff and Defendants sell and service jewelry and both provide custom jewelry design services. The Court recognizes that Defendants provide more extensive custom design services and that Defendants sell no other merchandise as Plaintiff does. Nevertheless, these differences do not overcome the similarities in the parties' services.

17. Plaintiff and Defendants compete to serve the same customers, *i.e.,* those customers who seek to purchase jewelry or have an item of jewelry repaired. In fact, each of the three customers Defendants called to testify at the preliminary injunction hearing had shopped at both Plaintiff's and Defendants' stores.

18. Plaintiff's and Defendants' advertising is not similar. As already indicated, Plaintiff devotes considerably more resources to advertising than Defendants do. According to the evidence, Defendants' advertising was limited to giving out balloons at one of the malls and a single black and white advertisement in a local newspaper insert. Plaintiff, on the other hand, virtually always advertises via multi-page, full-color advertisements.

19. The evidence was insufficient to show that Defendants intended to take advantage of the goodwill associated with Plaintiff's service mark. Although the Court finds the similarity of Plaintiff's and Defendants' marks to be striking and the proximity of Defendants' store to Plaintiff's to be a disturbing coincidence, Defendants offered credible testimony that they did not intend to engage in any prohibited activity.

20. Defendants' use of the trade name "Service Jewelry Store" has caused actual confusion on several occasions. Some customers have asked Plaintiff's managers when Plaintiff's "new" store was going to open (referring to Defendants' stores); some customers have asked

Plaintiff's managers where they could get the balloons that Defendants were handing out to promote their own store; one job applicant contacted Plaintiff when in fact he was seeking employment with Defendants; and the postal service has delivered mail to Plaintiff that was intended for Defendants. Defendants' attempt to rebut Plaintiff's evidence of actual confusion be calling three customers who were not confused by Defendants' trade name was not persuasive because each of the customers admitted that she had known of Plaintiff's services long before Defendants' began using the trade name "Service Jewelry Store".

21. In light of all the factors considered in paragraphs 13 through 20 above, the Court finds that Defendants use of the trade name "Service Jewelry Store" is likely to cause confusion, or to cause mistake or to deceive. Defendants use of the trade name "Service Jewelry Store" is also likely to dilute the distinctive quality of Plaintiff's registered marks.

22. Defendants' use of the word "Service" in their trade name is not a "fair use" because they are using the word "Service" as a service mark. The Court finds that Defendants are using the term "Service" within their trade name as a means to identify and distinguish their services from others, not simply to describe their services.

23. The Court's findings reveal that Plaintiff faces irreparable harm because it cannot control the quality of Defendants' products or services. Plaintiff's goodwill may be damaged where customers are dissatisfied with the quality of the product or service they receive from Defendants yet associate that experience with Plaintiff's service mark. Moreover, such injury to Plaintiff outweighs that faced by Defendants. Defendants continued use of the trade name "Service Jewelry Store" threatens to undermine the effectiveness of millions of dollars worth of advertising and decades of goodwill by Plaintiff. Defendants, on the other hand, have only recently begun using the trade name "Service Jewelry Store" and have made a minimal investment in advertising. Finally, the Court finds that public policy would be served by the issuance of an injunction where, as in this case, the injunction is in the aid of enforcing a federal statutory right and is in the aid of legitimate commerce.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction over Plaintiff's federal service mark infringement claim and false designation of origin claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The Court has pendant subject matter jurisdiction over Plaintiff's state-law claims for violations of the common law of Texas and Texas Business and Commerce Code, § 16.29. Likewise, the Court has jurisdiction over Defendants' counterclaim for false designation of origin pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338 and pendent jurisdiction over Defendants' counterclaims for violations of the common law of Texas. Both Defendants are Texas residents and have not asserted any objections to venue or personal jurisdiction in this Court.

2. In order to state a claim for service mark infringement, the holder of a registered service mark must show that another person is using (or has used): (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. 15 U.S.C. § 1114(1)(a); *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1009–10 (5th Cir.1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

3. In determining whether there is a likelihood of confusion, the Court should consider the following factors: (1) the type, or strength, of Plaintiff's mark; (2) the degree of similarity between Plaintiff's and Defendants' marks; (3) the similarity of Plaintiff's and Defendants' goods

or services; (4) the identity of Plaintiff's and Defendants' retail stores and customers; (5) the similarity of Plaintiff's and Defendants' advertising; (6) the Defendants intent; and (7) the existence of actual confusion. *Soweco, Inc. v. Shell Oil Company*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *Roto–Rooter Corp. v. O'Neal*, 513 F.2d 44, 45 (5th Cir.1975). It is sufficient if Plaintiff shows that any of these factors demonstrate a likelihood of confusion; it is not necessary for Plaintiff to show that all, or a majority, of these factors are present in this case. *See, Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159–60 (5th Cir.1982); *American Automobile Association (Inc.) v. AAA Insurance Agency, Inc.*, 618 F.Supp. 787 (W.D.Tex.1985).

4. The type, or strength, of a mark is determined by its distinctiveness. While some courts consider how often a mark is used by parties other than the owner of the mark, *see, Exxon Corporation v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir.1980), others simply try to determine which "pigeon hole" the mark belongs in, *e.g.*, generic, descriptive, suggestive, or arbitrary or fanciful. *See, AAA*, 618 F.Supp. at 792. A "generic" term is one that refers to the genus of which a particular product or service is a species; such a term is not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic. 15 U.S.C. § 1052(e), 1064(c), *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). A "descriptive" mark is one that describes the qualities or characteristics of a good or service; such a mark may be registered only if the registrant shows that the mark has acquired secondary meaning, *i.e.*, has become distinctive of the applicant's goods in commerce. 15 U.S.C. § 1052(e), (f); *Park 'N Fly*, 469 U.S. at 194, 105 S.Ct. at 661. A "suggestive" mark suggests some characteristic of the goods or services to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of the goods or ser-

vice. *Soweco*, 617 F.2d at 1184. An "arbitrary" or "fanciful" mark bears no relationship to the product or service with which it is associated. *Id.* A service mark that is commonly used by other parties in the same business or is merely descriptive is considered "weak", whereas a mark that is rarely used by parties in the same business other than the registrant or is suggestive or fanciful is considered "strong".

5. The similarity of appearance of marks is determined by an "eyeball" test in which the prominence of certain words is important and which emphasizes the total effect rather than individual features. *Exxon Corp.*, 628 F.2d at 504. Plaintiff need not show that the marks are identical to establish infringement. *AAA*, 618 F.Supp. at 792.

6. Evidence of actual confusion caused by a similar mark is not conclusive or required, but it is the best evidence of the likelihood of confusion. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

7. Proof of registration of a service mark with the United States Patent and Trademark Office constitutes *prima facie* evidence of the registrant's exclusive right to use the registered mark in commerce for the services specified in the registration, but it does not preclude an opposing party from "proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered". 15 U.S.C. § 1115(a); *Soweco*, 617 F.2d at 1184. However, where, as in this case, the registrant has used its mark in connection with the services specified in its registration for five (5) continuous years after the registration date and filed an appropriate affidavit, the mark is deemed "incontestable". 15 U.S.C. § 1065. The registration of an incontestable mark constitutes conclusive evidence of the registrant's exclusive right to use the mark in commerce for the services specified in the affidavit, subject only to the seven defenses enumerated by 15 U.S.C. § 1115(b) and

the limitations of § 1065 itself. *See, Soweco,* 617 F.2d at 1184.

8. Although Defendants may argue that Plaintiff's mark is generic and not entitled to any protection, *see,* 15 U.S.C. § 1064(c), 1065, they may not avoid liability for infringement of Plaintiff's incontestable mark by asserting that it is merely descriptive. *Park 'N Fly,* 469 U.S. at 205, 105 S.Ct. at 667. A mark that has become incontestable is effectively deemed to be either suggestive or, if descriptive, it is deemed to have secondary meaning. This case presents a slightly unusual situation insofar as only one of Plaintiff's three registered marks containing the phrase Service Merchandise has become totally incontestable. Plaintiff argues, and the Court agrees, that Defendants are precluded from asserting that the two non-incontestable Service Merchandise marks are merely descriptive. Although the three marks are composed of slightly different designs and one has the additional phrase "Your Store" appended to it, the relevant phrase of Service Merchandise is common to each mark. It would be illogical to allow Defendants to claim that the phrase Service Merchandise is merely descriptive with respect to the non-incontestable marks while the law conclusively presumes that the same phrase is *not* merely descriptive with respect to the incontestable mark. *See, In re American Sail Training Association,* 230 U.S.P.Q. 879 (TTAB.1986).

9. Defendants correctly point out that Plaintiff disclaimed the exclusive right to use the word "Service" separate and apart from its mark number 1,077,145. However, even if the word "Service" constituted an unregistrable generic term, it remains true that words that could not individually become a trademark may become one when taken together. *Union Carbide Corporation v. Ever-Ready Incorporated,* 531 F.2d 366, 379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). In determining whether Service Merchandise constitutes a generic term, the Court must look to the totality of the phrase, not its component parts.

10. One of the permissible defenses to a claim of infringement of an incontestable mark is that a party's use of the relevant term constitutes "fair use". 15 U.S.C. § 1115(b)(4); *Soweco,* 617 F.2d 1185. This defense is available if Defendants can show that their use of the term: (1) is not as a service mark; (2) is descriptive of the services they provide; and (3) is fair and in good faith. *Id.* A term is used as a service mark if it is used in the sale or advertising of services to identify and distinguish the services of one person from another. 15 U.S.C. § 1127.

11. The test for a violation of 15 U.S.C. § 1125(a) is essentially the same as that for service mark infringement. *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.,* 656 F.2d 186, 192 (5th Cir.1981); *AAA,* 618 F.Supp. at 795.

12. Texas Business and Commerce Code, § 16.29 has only been effective since June 14, 1989; therefore, there is not yet any clear authority on the precise contours of its application. § 16.29 provides:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services. An injunction sought under this section shall be obtained pursuant to Rule 680, *et seq.,* of the Texas Rules of Civil Procedure.

§ 16.29 offers broader protection for Plaintiff's service marks than federal law because it authorizes relief "regardless of whether there is competition between two parties or confusion as to the source of goods or services".

13. Although Plaintiff has provided authorities regarding the elements necessary for the issuance of an injunction under state common law, it did not provide any authorities regarding the elements necessary to show common law service mark infringement. Presumably, Plaintiff is content to rely on its federal claims and its

state statutory claim for the purposes of this proceeding. Accordingly, it is hereby

Ordered that Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order, are Permanently Enjoined from using the trade name "Service Jewelry" or "Service Jewelry Store" in connection with the distribution, advertising, sales, or service of jewelry. It is further

Ordered that costs are taxed against the party incurring the same. It is further

Ordered that all relief not specifically granted herein is DENIED.